**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MINTVEST CAPITAL, LTD.,**<br>Plaintiff, on its behalf and on<br>Derivatively for Energy & Compute, LLC,<br><br>v.<br>**ENERGY & COMPUTE, LLC (formerly COINMINT, LLC), ASHTON SONIAT, individually and as Managing Member of Energy & Compute, LLC, STONE RIDGE HOLDINGS GROUP, LP, NYDIG TRUST COMPANY, NYDIG MINING LLC, NEW YORK DIGITAL INVESTMENT GROUP, LLC, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, MOSES MERGER SUB, LLC, JOHN DOES 1-10, officers and managers of Energy & Compute, LLC,**<br><br>Defendants. | **Civ No.: 25-1346 (PAD)**<br><br>**SECURITIES FRAUD, RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS, ACT, FRAUD, DOLO, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, UNJUST ENRICHMENT**<br><br>**DEMAND FOR A JURY TRIAL** |

**VERIFIED AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Mintvest Capital, Ltd. ("Mintvest") on its own behalf and derivatively for Energy & Compute, LLC, by and through its undersigned counsel, and very respectfully states and prays:

## I. INTRODUCTION

Plaintiff files this Verified Amended Complaint as of right. Federal Rule of Civil Procedure 15(a)(1). As Plaintiff indicated on the civil cover sheet in this litigation, this case is related to 25-1019(FAB), which the Honorable Magistrate Judge has recommended be dismissed without prejudice because the diversity jurisdiction that Plaintiff understood existed does not, and the

motion to dismiss the Complaint occurred after the scheduling order deadline. *See* Report and Recommendation, Docket 99 in 25-1019. Plaintiff objected to that Report and Recommendation. District Court Judge Francisco A. Besosa has not ruled on the objection. Given that the deadline for service of process approaches, Plaintiff files this Amended Complaint as of right to expand both the parties sued and the claims made.

## II. PARTIES

1. Plaintiff Mintvest Capital, Ltd. is a Delaware corporation with its principal place of business in Florida.
2. Derivative Plaintiff Energy & Compute, LLC, formerly known as Coinmint, LLC, is a Puerto Rico limited liability company with its principal place of business in Puerto Rico at 2210 Dorado Beach Rd., Dorado, PR 00646.
3. Defendant Energy & Compute, LLC, formerly known as Coinmint, LLC, is a Puerto Rico limited liability company with its principal place of business in Puerto Rico at 2210 Dorado Beach Rd., Dorado, PR 00646. Coinmint participated in the securities fraud and the RICO enterprise.
4. Defendant Ashton Soniat is an individual residing in Texas who serves as CEO and Managing Member of Energy & Compute, LLC, and who personally participated in the fraudulent schemes and RICO enterprise.
5. Defendant Stone Ridge Holdings Group, LP is a legal entity with its principal place of business at 510 Madison Avenue, 21st Floor, New York, NY. Stone Ridge is the ultimate member of the chain of LLC companies that owns NYDIG Trust and the other NYDIG entities.

6. Defendant NYDIG Trust Company is a legal entity with its principal place of business at One Vanderbilt Place, 65th Floor, New York, NY, which is one of Stone Ridge's partners and participated in and benefitted from the securities fraud described herein.
7. Defendant NYDIG Mining, LLC is a legal entity with its principal place of business at One Vanderbilt Place, 65th Floor, New York, NY, which is one of Stone Ridge's partners and participated in and benefitted from the securities fraud described herein.
8. Defendant New York Digital Investment Group, LLC is a legal entity with its principal place of business in New York, which purchased Coinmint, LLC and participated in and benefitted from the securities fraud described herein.
9. Defendant New York Life Insurance and Annuity Corporation is a partner of Stone Ridge with its principal place of business in New York. New York Life has been an indirect equity participant in Energy & Compute, LLC for approximately one year and, upon information and belief, has received distributions while Mintvest has been excluded. The extent of New York Life's participation in the fraudulent scheme will be determined through discovery.
10. Defendant Moses Merger Sub, LLC is Delaware, LLC and a wholly owned subsidiary of New York Digital Investment Group, LLC with its principal place of business in New York, which merged into Coinmint, LLC and participated in and benefitted from the securities fraud described herein.
11. Defendants John Does 1-10 are officers, directors, and/or managers of Energy & Compute whose true names and residences are unknown to Plaintiff but who personally participated in the scheme to defraud Mintvest. Plaintiff will seek leave to amend to add their true names upon discovery if necessary

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to: a. 28 U.S.C. § 1331 (federal question) based on:
    - Securities fraud claims under 15 U.S.C. § 78j(b) involving interstate commerce and use of wires
    - The Soniat Defendants investment of the proceeds of racketeering activity into the enterprise formed between Mr. Soniat and Energy & Compute in violation of 18 U.S.C. § 1962(a)
    - RICO claims as to the Soniat Defendants under 18 U.S.C. § 1962(c) with predicate acts of wire fraud across state lines and theft from interstate shipments
    - The Soniat Defendants' conspiracy to engage in an enterprise that commits wire fraud and theft from interstate shipments in violation of 18 U.S.C.A. § 1962 (d)
    - The Bitcoin transfers constituted interstate wire transfers
    - The merger involved entities from multiple states using interstate commerce
    - Tax reporting violations under 26 U.S.C. § 7434 b. 28 U.S.C. § 1367 (supplemental jurisdiction) over all state law claims as they form part of the nucleous of operative facts.
13. Plaintiff estimates that the current amount of unpaid profits and related interest it is owed exceeds $104 million, with damages increasing by approximately $2.5 million per month.
14. Pursuant to the internal affairs doctrine, Puerto Rico courts, including this Court, have exclusive jurisdiction over the internal affairs of Energy & Compute, LLC, a Puerto Rico limited liability company, including matters relating to the rights and obligations of its members, distributions, and governance. 14 L.P.R.A. § 3961.

15. Stone Ridge Holdings Group, LP, NYDIG Trust Company, NYDIG Mining LLC, New York Digital Investment Group, LLC, New York Life Insurance and Annuity Corporation, and Moses Merger Sub, LLC, could all reasonably expect to have these controversies heard in this Court because the NYDIG entities, which operate as a single enterprise with the same employees at the same address, through their representative met with the principal of Mintvest Capital, who described the prior litigation between Mintvest and Coinmint, including the Delaware Court's determination that currently only a Court in Puerto Rico would have jurisdiction over the ownership of Energy & Compute because the corporation is located in Puerto Rico.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Energy & Compute is a Puerto Rico limited liability company, a substantial part of the events giving rise to the claims occurred in this district, including the merger transaction and the predicate RICO acts, and this is the only proper forum for adjudicating the internal affairs of a Puerto Rico LLC.

## III. FACTUAL ALLEGATIONS

### A. Mintvest's Ownership Interest in Energy & Compute

17. Mintvest owns an 18.2% equity interest in Energy & Compute, LLC (formerly Coinmint, LLC), as determined by the Delaware Court of Chancery in *In re Coinmint, LLC*, 261 A.3d 867 (Del. Ch. 2021).

18. The Delaware Chancery Court's determination of Mintvest's 18.2% ownership interest is res judicata and binding on all parties to the Coinmint litigation.

19. Pursuant to the internal affairs doctrine, which has constitutional dimensions, the Delaware Court had exclusive jurisdiction to determine the ownership interests in Coinmint while it was a Delaware entity.

20. The Delaware Chancery Court found that "Leary and Soniat agreed to peg Mintvest's equity stake at 18.2%" and that this arrangement was "memorialized in a Statement of Changes in Partners' Equity backdated to August 31, 2017 (the 'October 2017 Agreement')." *In re Coinmint*, 261 A.3d at 881.

21. Coinmint, LLC converted from a Delaware limited liability company to a Puerto Rico limited liability company on January 25, 2018.

22. Upon conversion to a Puerto Rico LLC, the internal affairs of Coinmint (now Energy & Compute) became exclusively governed by Puerto Rico law, and Puerto Rico courts obtained exclusive jurisdiction over matters relating to the company's internal affairs, including the rights of members, distributions, and governance. See 14 L.P.R.A. §§ 3951-3961. The Delaware Chancery Court so held in *In re Coinmint, LLC*, 261 A.3d at 905 (recognizing that upon conversion, "the limited liability company shall cease to exist as a limited liability company of the State of Delaware" and that the new state's law governs).

23. Just as the Delaware Chancery Court had exclusive jurisdiction over Coinmint's internal affairs when it was a Delaware entity, Puerto Rico courts, including this Court, now have exclusive jurisdiction over Energy & Compute's internal affairs as a Puerto Rico entity.

24. Following a merger transaction completed on or about June 30, 2024, Coinmint, LLC changed its name to Energy & Compute, LLC, with Energy & Compute being the surviving entity and continuing as a Puerto Rico limited liability company.

## B. Derivative Standing and Demand Futility

25. Mintvest brings Counts II (RICO), III (Conversion), and VI (Unjust Enrichment) derivatively on behalf of Energy & Compute, LLC.

26. Mintvest has standing to bring derivative claims as an 18.2% member of Energy & Compute.

27. Demand on the board would be futile because: a. Ashton Soniat controls the company as Managing Member and is the primary wrongdoer alleged herein; b. The NYDIG Defendants participated in certain elements of and benefited fromthe wrongful conduct and, thus, were unjustly enriched; c. No independent directors or managers exist who could fairly evaluate a demand; d. The wrongdoing alleged involves systematic theft and self-dealing by those in control.

28. The wrongs alleged damaged Energy & Compute by depleting its assets through theft of Bitcoin, self-dealing transactions, fraudulent transfers to insiders, and destruction of business relationships with investors and counterparties.

## C. Energy & Compute's Highly Profitable Operations

29. Prieur Leary, through Mintvest, founded Coinmint in December 2015, seven months before Ashton Soniat joined the venture.

30. As a technology and data center entrepreneur since 1997 with experience developing and operating data centers on three continents, Mr. Leary conceived the Coinmint business concept, developed all business and technology plans, and personally executed and implemented 100% of the business, technology, and operational efforts that built Coinmint into a successful cryptocurrency mining enterprise.

31. While Mr. Soniat's contribution was limited to financing and financial strategy, Mr. Leary contributed all other aspects of the business, including the operational expertise, industry relationships, and hands-on management that the Delaware Chancery Court recognized as valuable "sweat equity."

32. Upon information and belief, Energy & Compute continues to operate a highly profitable cryptocurrency mining business with facilities in multiple locations, generating substantial monthly profits.

33. In May 2021, Energy & Compute ceased providing Mintvest with any information regarding Energy & Compute's financial situation.

34. Prior to that, Mintvest received monthly reports as to Energy & Compute's financial situation.

35. In addition to its statutory obligation to provide such information, the company's operating agreement specifically provides that owners are entitled to receive the company's financial statements and interim financial statements.

36. Energy & Compute's pattern of withholding financial information is consistent with its documented inability to maintain proper financial records, as demonstrated by evidence that even with five months of expert assistance from James DeNaut (former head of a Wall Street broker-dealer) and Frank Kinney, the company could not produce adequate financial reporting necessary to complete financing applications with Blockchain.com or other lenders.

37. This systematic failure to maintain proper financial records appears deliberate, designed to obscure self-dealing transactions and prevent outside oversight, as evidenced by the

company's documented history of being unable to produce financial statements even when legally compelled to do so in other proceedings.

38. Upon information and belief, Energy & Compute has generated profits exceeding $570 million from August 2022 through the present, of which Mintvest's 18.2% share exceeds $104 million.

39. Upon information and belief, Energy & Compute continues to generate profits of approximately $13.7 million per month, of which Mintvest's 18.2% share is approximately $2.5 million per month.

40. These profits continue to accumulate monthly, increasing Mintvest's damages with each passing month, as shown in the following damages calculation:

| Period | Total Profits (Est.) | Mintvest's 18.2% Share |
|---|---|---|
| Aug 2022 - Jan 2025 | $570,000,000 | $103,740,000 |
| Monthly ongoing | $13,700,000 | $2,493,400 |

**D. Pattern of Bad Faith Business Conduct**

41. Energy & Compute, under Soniat's control, has demonstrated a pattern of bad faith business conduct, including but not limited to the $150 million breach of contract with Katena Computing Technologies, Inc., where an arbitration panel in 2024 found that Coinmint made material misrepresentations about having "cash in hand" when it had no such funds available.

42. In the Katena matter (AAA Case No. 01-22-0001-7627), the arbitration panel specifically found that: a. Coinmint falsely represented it had cash available for a $37.5 million down payment; b. Soniat had extracted over $60 million from the company immediately before signing the contract; c. Coinmint was unable to produce proper financial statements

despite months of expert assistance; d. The company breached its contractual obligations and acted in bad faith.

43. This pattern of entering into contracts without the ability to perform, while simultaneously extracting funds for insider benefit, demonstrates the systematic nature of the Soniat Defendants' fraudulent scheme.

44. The NYDIG Defendants' failure to identify these issues in a reasonable due diligence process should have led to the failings being remedied once NYDIG took control. The failure to remedy these issues is evidence of their knowledge and willingness to benefit from Mr. Soniat's conduct. Notably, Joshua Burandt, an employee of the NYDIG entities at the time, actively participated in the deceptive scheme to obtain information from Mintvest while concealing NYDIG's acquisition plans.

**E. Ashton Soniat's Theft of Investor Funds Through a Hashrate Contract Scheme as Part of the RICO Enterprise**

45. As CEO of Coinmint, Mr. Soniat conspired with the company to engage in a pattern of theft from interstate shipments in violation of 18 U.S.C. § 659 by stealing investor funds through a fraudulent hashrate contract scheme that defrauded numerous investors, including but not limited to Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, and Christian Horcel.

46. The scheme operated as follows: First, Coinmint solicited investors to buy "hashrate contracts," which are essentially profit-sharing agreements for the output of bitcoin mining machines.

47. The investors made commitments and signed contracts, which gave the investors a combined ownership interest in all Bitcoin the machines produced.

48. Coinmint would calculate how much hashrate the investors had versus the company, then order bitcoin mining machines accordingly.

49. Mr. Soniat began his conspiracy with Coinmint to steal investors' money by loaning the company money to buy machines, with loans typically repaid within months.

50. By January 2018, the company owed Mr. Soniat nothing.

51. When machines arrived, Mr. Leary physically onsite installed them - often 8,000 machines per round.

52. The machines started producing Bitcoin immediately upon coming online.

53. It typically took three to five days to activate all machines.

54. Coinmint periodically added additional machines to its grid by purchasing new machines the combined output of which was shared between the company and investors.

55. On each occasion when new machines were added, Mr. Soniat told investors that production started on a later date than it actually did.

56. During the gap periods -- between the actual start up and the announced startup -- Mr. Soniat redirected all Bitcoin Coinmint produced to his personal Bitcoin wallet, depriving both Coinmint and its investors of their respective Bitcoin.

57. The specific instances of Bitcoin theft were as follows:

- Between February 28, 2017 and March 14, 2017: Mr. Soniat redirected **38.535 Bitcoin**
- Between May 28, 2017 and July 10, 2017: Mr. Soniat redirected **132.73 Bitcoin**
- Between August 12, 2017 and September 6, 2017: Mr. Soniat redirected **111.4358 Bitcoin**

- Between December 9, 2017 and January 7, 2018: Mr. Soniat redirected **166.0285 Bitcoin**
- **Total Bitcoin Mr. Soniat stole from interstate shipments through this criminal enterprise with Coinmint: 448.7193 Bitcoin**

58. At current market prices of approximately $105,000 per Bitcoin (as of January 2025), the total value of the stolen Bitcoin exceeds **$47.1 million**.
59. These funds belonged to Coinmint and its investors, including Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and numerous other investors whose identities will be revealed through discovery.
60. The investors were not paid the portion of this Bitcoin that they owned, nor was Mintvest given its rightful distribution.
61. Moreover, Mr. Soniat did not have Coinmint repay its loans as soon as the Bitcoin began to be produced, thereby depriving Coinmint itself of funds.
62. Mintvest raises Coinmint's claims derivatively to prevent the criminal enterprise that Mr. Soniat created as CEO from depriving the company of working capital.
63. Given the history of litigation between Mintvest and Coinmint, any effort by Mintvest to raise this RICO violation internally through the company would be futile.
64. Due to Mr. Soniat's theft of interstate shipments, Coinmint became unable to pay its investors the amounts owed by their agreements, causing substantial harm to all parties involved, in particular Plaintiff.
65. These particular RICO violations caused harm to Coinmint's reputation among the relatively small pool of investors willing to invest in Bitcoin startups.

66. While testing of new mining equipment should only last a few days, Mr. Soniat extended these "testing" periods for weeks or months, taking all proceeds that should have been distributed to the company and investors.

67. Eventually, Mr. Soniat would instruct Coinmint's financial manager Steve Wang to redirect machine output to company and investor Bitcoin wallets, but only after stealing substantial amounts for himself during each gap period.

68. This systematic theft of investor funds through fraudulent diversion of Bitcoin mining proceeds that Coinmint and Mr. Soniat completed as an enterprise dedicated to such theft also constitutes wire fraud as a predicate crime for RICO violations.

**F. Ashton Soniat's Blackmail of Investors**

69. In September 2021, Mr. Soniat engaged in another fraudulent scheme by blackmailing investors into cancelling their highly lucrative investor contracts.

70. Mr. Soniat threatened investors, including but not limited to Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and numerous others, that he would cancel their contracts unless they agreed to be bought out for only 20% of the contracts' actual value.

71. Mr. Soniat sent these extortionate communications via email, violating 18 U.S.C. § 1343 (wire fraud).

72. This extortionate conduct forced these investors to accept massive losses or risk losing their entire investment.

73. The identified investors represent only a partial list of those harmed by Mr. Soniat's blackmail scheme, with the full extent of victims to be revealed through discovery.

74. Committing this particular type of extortion injured Coinmint's reputation severely because of the limited pool of investors for Bitcoin startups.

75. This blackmail scheme constitutes additional predicate acts of wire fraud and interference with commerce by threats or violence for purposes of RICO violations of 18 U.S.C. §§ 1343 and 1951.

**G. The NYDIG Due Diligence and Fraudulent Meeting**

76. On information and belief, the NYDIG Defendants developed an interest in purchasing Coinmint LLC in early 2023 and began to conduct due diligence regarding that purchase at that time.

77. In the course of conducting that due diligence, Joshua Burandt, the Head of Strategic Partnerships of the NYDIG entities (which operate as a single enterprise), met with Prieur Leary on May 11, 2023 in person at NYDIG's office in New York City.

78. The meeting was scheduled after Mintvest's lengthy engagement with NYDIG regarding a Bitcoin mining deal in Texas.

79. NYDIG led Mr. Leary to believe the meeting would concern that Texas transaction.

80. However, Mr. Burandt deceptively used the meeting to extract information about Coinmint and Mintvest's ownership interest.

81. Mr. Burandt unexpectedly began asking about Coinmint, Mr. Leary's founding of Coinmint with Mr. Soniat, and Mr. Leary's work at Coinmint.

82. Mr. Burandt asked extensive questions about the litigation with Mr. Soniat, including specific questions about Mr. Leary's equity in Coinmint through Mintvest.

83. The majority of the meeting time was spent on the Coinmint controversy, rather than the purported Texas deal.

84. Mr. Burandt purposely misled Mr. Leary as to NYDIG's true intentions.

85. Mr. Leary, acting in good faith and unaware of NYDIG's deceptive intentions, was fully transparent with Mr. Burandt, informing him that: a. Mintvest held 18.2% equity in Coinmint; b. The Delaware courts had ruled on this ownership interest; c. A Delaware court had also ruled that only the jurisdiction where Coinmint was registered had jurisdiction over Coinmint's ownership based on the internal affairs doctrine.

86. Upon information and belief, Mr. Burandt and NYDIG used this deceptively obtained information as part of their due diligence for purchasing Coinmint, while concealing from Mr. Leary and Mintvest that they intended to acquire the company.

87. NYDIG's deceptive concealment harmed Mintvest by preventing it from taking protective actions.

88. Had Mintvest known NYDIG's true intentions to acquire Coinmint while conspiring to exclude Mintvest, it could have: a. Sought injunctive relief to prevent the transaction; b. Negotiated for protection of its interests in the merger; c. Participated in the sale process to ensure fair value; d. Taken other legal action to protect its 18.2% ownership stake.

89. Instead, NYDIG's deception allowed the transaction to proceed without Mintvest's knowledge, enabling the conspiracy to freeze out Mintvest from its rightful ownership benefits.

**H. The NYDIG Transaction**

90. On June 30, 2024, the NYDIG Defendants purchased Coinmint, LLC through an Agreement and Plan of Merger.

91. Under the Agreement and Plan of Merger, Moses Merger Sub, LLC, a wholly owned subsidiary of New York Digital Investment Group, LLC, merged into Coinmint, LLC, with Coinmint, LLC being the surviving entity.

92. The Agreement provides that the Equityholders of Coinmint, LLC are to be compensated.

93. As Defendants knew, Mintvest is an Equityholder of Coinmint.

94. Defendants did not compensate Mintvest as the Agreement and Plan of Merger provides.

95. Following the merger, New York Digital Investment Group, LLC owned Coinmint, and Coinmint subsequently changed its name to Energy & Compute, LLC.

96. Stone Ridge's partner, NYDIG, could not have proceeded forward with a transaction of this size without the authorization and approval of Stone Ridge.

97. Stone Ridge has admitted that it is an owner of NYDIG and is self-described as the ultimate member of the chain of LLC companies that owns NYDIG Trust, NYDIG Mining, LLC, and New York Digital Investment Group, LLC, all of which benefitted from the acquisition of Coinmint and should have anticipated the possibility of litigation in this district given the information that Mr. Leary provided them about the Delaware Chancery Court litigation.

98. In particular, Mr. Leary told the agent of NYDIG Mining and New York Digital Investment Group that the Delaware Court held that now that Coinmint was registered in Puerto Rico, only Puerto Rico courts had jurisdiction over its internal affairs.

**I. Federal Securities Fraud**

99. Mintvest's 18.2% membership interests in Energy & Compute constitute investment contracts and/or securities under federal law because: a. Members invested money in a common enterprise; b. There was an expectation of profits; c. After the freeze-out beginning

May 2021, Mintvest had no management role whatsoever; d. Mintvest's returns became entirely dependent on the efforts of others; e. The NYDIG transaction treated all minority interests as passive investments; f. Post-2021, despite 18.2% ownership, Mintvest had zero control or input.

100. In connection with the June 30, 2024 NYDIG transaction involving the purchase and sale of Energy & Compute securities, Defendants, directly and indirectly, by use of interstate commerce, the mails, and the facilities of national securities exchanges: a. Employed devices, schemes, and artifices to defraud; b. Made untrue statements of material fact and omitted material facts necessary to make statements not misleading; c. Engaged in acts, practices, and courses of business which operated as a fraud upon Mintvest.

101. Specifically, NYDIG's fraudulent conduct included: a. Deceptively obtaining information about Mintvest's ownership through false pretenses; b. Concealing NYDIG's intention to acquire Coinmint while extracting confidential information; c. Conspiring with Mr. Soniat and Energy & Compute management to exclude Mintvest from the transaction; d. Preventing Mintvest from protecting its interests by concealing the planned acquisition.

102. Defendants' conduct violates Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, by employing devices, schemes, and artifices to defraud in connection with the purchase or sale of securities.

**J. Fraudulent Scheme to Deprive Mintvest of Its Ownership Rights**

103. Upon information and belief, Energy & Compute, acting through its officers, directors, controlling members, and agents (past and present), together with the NYDIG Defendants, engaged in a fraudulent scheme to deprive Mintvest of the value of its 18.2% ownership interest after Mr. Soniat and Coinmint conspired to deprive Mintvest and Coinmint of valuable assets and extorted money from Coinmint's investors.

104.Upon information and belief, this scheme includes, but is not limited to: a. Deceptively obtaining information about Mintvest's ownership through the fraudulent May 11, 2023 meeting; b. Concealing the true profitability of the company from Mintvest; c. Making false representations to third parties regarding Mintvest's ownership status; d. Diverting company profits to insiders while excluding Mintvest; e. Creating false records or destroying records relating to company profits and distributions; f. Entering into self-dealing transactions to siphon value from the company, including extracting excessive loan repayments to insiders while claiming inability to make distributions to members, including documented payments exceeding $60 million to Mr. Soniat immediately before executing the Katena contract for personal benefit; g. Deliberately structuring transactions to avoid obligations to Mintvest; h. Using deception to obtain confidential information about Energy & Compute's internal operations and financial details not publicly available, which could only be known by a company founder, while planning to exclude Mintvest from ownership benefits and executing that plan; i. Stealing 448.7193 Bitcoin worth over $47.1 million at current prices through fraudulent hashrate contract schemes, harming Coinmint and investors including Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and numerous others; j. Blackmailing these same investors and others to force buyouts at 20% of contract value, causing millions in additional losses; k. Making material misrepresentations to business counterparties about financial capacity, as found

in the Katena arbitration where Coinmint falsely claimed to have "cash in hand" for obligations it could not meet.

105. The badges of fraud are evident from Defendants' conduct, including: a. The deceptive procurement of information through the Burandt-Leary meeting; b. Complete cessation of all distributions to Mintvest while the company remained and remains highly profitable and other owners received distributions; c. Total blackout of financial information to Mintvest in violation of the corporate law of Puerto Rico and the operating agreement; d. Failure to provide legally required tax documents; e. The timing of the exclusion coinciding with the company's increased profitability and the NYDIG merger/acquisition; f. The systematic nature of the exclusion across all aspects of ownership rights; g. The theft of 448.7193 Bitcoin (worth over $47.1 million) through fraudulent diversion schemes that harmed numerous investors; h. The blackmail of investors including Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and others to force unfair buyouts; i. The documented pattern of extracting funds for personal benefit while simultaneously entering contracts the company cannot perform.

106. Upon information and belief, this fraudulent scheme was conceived and implemented by all Defendants, who conspired together to unlawfully deprive Mintvest of over $104 million in rightful distributions to date.

107. Defendants' fraudulent conduct is ongoing, with damages increasing by approximately $2.5 million each month as the scheme continues.

108. Defendants' fraudulent scheme includes attempting to circumvent Puerto Rico's exclusive jurisdiction over Energy & Compute's internal affairs by excluding Mintvest from its rightful distributions and governance rights as a member of a Puerto Rico LLC.

**K. Willful Exclusion of Mintvest from Profits and Information**

109. As an 18.2% equity owner of Energy & Compute, Mintvest is entitled to receive 18.2% of all profits and distributions made by the company.

110. Despite Mintvest's ownership interest and repeated demands, Energy & Compute has willfully failed and refused to distribute any profits to Mintvest from August 2022 through the present.

111. Energy & Compute has deliberately and in bad faith excluded Mintvest from receiving its rightful share of company profits while continuing to operate the business and generate substantial revenues.

112. Upon information and belief, Energy & Compute has distributed profits to other members while deliberately excluding Mintvest from such distributions, constituting discriminatory and oppressive conduct toward a minority member.

113. Energy & Compute's actions constitute a willful and malicious freeze-out of Mintvest as a minority member, designed to deprive Mintvest of the value of its ownership interest.

**L. Failure to Provide Financial Information and Tax Documents**

114. As a member of Energy & Compute, Mintvest has a right to receive regular financial reports and information regarding the company's operations both under Puerto Rico corporate law and the operating agreement.

115. Moreover, as a pass-through entity, Energy & Compute is required by federal tax law to provide Schedule K-1 forms to all members annually, reporting each member's share of the company's income, deductions, and credits.

116. Energy & Compute has failed and refused to provide Mintvest with: a. Any financial statements or reports; b. Any information regarding company revenues, expenses, or profits; c. Required annual Schedule K-1 tax forms; d. Any other information to which Mintvest is entitled as a member.

117. Energy & Compute ceased to provide K-1 tax forms starting for the 2019 tax year and continuing until the present.

118. After the Delaware Chancery Court announced its decision confirming Mintvest's 18.2% equity interest in May 2021, Energy and Compute ceased providing the monthly financial information it had been providing up until that time.

119. The failure to provide required tax documents has prejudiced Mintvest's ability to file its tax returns properly and may subject Mintvest to penalties and interest from tax authorities.

120. Energy & Compute's withholding of financial information and tax documents is part of its deliberate scheme to freeze out Mintvest and deprive it of its rights as a member.

## IV. CAUSES OF ACTION

### COUNT I - Securities Fraud - Violation of Section 10(b) and Rule 10b-5

121. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

122. The membership interests in Energy & Compute are securities within the meaning of the federal securities laws.

123. In connection with the NYDIG transaction involving the purchase and sale of Energy & Compute securities, Defendants, directly and indirectly, by use of interstate commerce, the mails,

and the facilities of national securities exchanges: a. Employed devices, schemes, and artifices to defraud; b. Made untrue statements of material fact and omitted material facts necessary to make statements not misleading; c. Engaged in acts, practices, and courses of business which operated as a fraud upon Mintvest.

124. Defendants acted with scienter, having actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acting with reckless disregard for the truth, as demonstrated by their deliberate actions to gather information about Mintvest's ownership interest while concealing their true intentions.

125. Each Defendant aided and abetted the remaining Defendants in order to achieve the goal of defrauding Mintvest.

126. Mintvest reasonably relied on Defendants' representations regarding the purpose of the meetings and suffered damages as a result.

127. As the ultimate member of the chain of LLC companies that owns NYDIG Trust, Stone Ridge and the members of that chain are liable to Mintvest for the securities fraud committed herein in this scheme involving investment of money in a common enterprise.

128. Mintvest has been damaged as a direct and proximate result of Defendants' violations of the federal securities laws in an amount exceeding $104 million.

**COUNT II - RICO Violations - 18 U.S.C. § 1962(a)(b)(c) and (d) (Brought Derivatively)**

129. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

130. This count is brought derivatively on behalf of Energy & Compute, LLC.

131. At all relevant times, Defendants Soniat and Energy & Compute (the "Soniat Defendants") constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that engaged

in interstate commerce for the purpose of defrauding Energy & Compute, investors, and Mintvest.

132. The Soniat Defendants conducted or participated in the conduct of the enterprise's affairs and conspired through a pattern of racketeering activity consisting of multiple acts of wire fraud (18 U.S.C. § 1343), theft from interstate shipments (18 U.S.C. § 659), and interference with commerce by threats or violence (18 U.S.C. § 1951), including: a. False representations to investors and others regarding ownership structure and production dates; b. Systematic concealment of financial information in interstate communications; c. Fraudulent diversion of Bitcoin mining proceeds to Ashton Soniat's personal wallet, stealing 448.7193 Bitcoin worth over $47.1 million at current values; d. Wire fraud in connection with fraudulent hashrate contracts that misrepresented how investor funds and mining proceeds would be handled; e. Systematic theft of investor proceeds during purported "testing" periods that lasted weeks or months instead of days, harming Coinmint, Mintvest, and investors including Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and numerous others in violation of 18 U.S.C. § 659; f. Wire fraud in directing stolen Bitcoin to personal wallets instead of company and investor wallets; g. Interference with commerce through threats or violence by blackmailing these investors and others in September 2021 to force them to sell contracts for 20% of value; h. Fraudulent omission of Mintvest from all profit distributions; i. Pattern of bad faith business conduct as evidenced by findings in *Coinmint, LLC v. Katena Computing Technologies, Inc.*, AAA Case No. 01-22-0001-7627, where an arbitration panel found Coinmint breached a $150 million contract and made material misrepresentations about having "cash in hand."

133. These acts of racketeering activity constitute a "pattern" as they are related, continuous, and occurred over a multi-year period from at least 2017 through 2024.

134. The pattern of racketeering demonstrates continuity and relatedness through: a. Regular scheme: Bitcoin theft occurred with each new machine installation (at least 4 documented instances from 2017-2018); b. Consistent methodology: Systematically extending "testing" periods to divert proceeds; c. Multiple victim groups: Individual investors, Mintvest, and Energy & Compute itself; d. Extended time period: 2017-2024 with monthly ongoing harm; e. Threat of continuation: Damages for fraudulently failing to disburse profits increasing $2.5 million monthly without judicial intervention.

135. Mr. Soniat acquired and maintained a greater interest in Energy & Compute through a pattern of racketeering activity through the actions set forth in paragraph 128 all of which affect interstate commerce in violation of 28 U.S.C.§1962(a) and (b)

136. Mr. Soniat and Energy & Compute conspired to violate the subsections a, b, and c of 28 U.S.C. §1962 in violation of 28 U.S.C. §1962(d).

137. Discovery will almost certainly reveal additional predicate felonies, as Defendants exclusively control company records and have deliberately concealed their conduct, as evidenced by their documented inability to produce financial records even under legal compulsion and with expert assistance.

138. The predicate acts of racketeering were committed through the use of interstate wire communications, including: a. Electronic transfers of stolen Bitcoin across state lines; b. Email and other electronic communications to defraud investors; c. Interstate communications to blackmail investors; d. Wire transfers of fraudulently obtained funds.

139. As a direct and proximate result of the Soniat Defendants' racketeering activities, Energy & Compute has been injured in its business and property through theft of assets, destruction of business relationships, and reputational harm, in an amount exceeding $47.1 million, entitling the company to treble damages under 18 U.S.C. § 1964(c).

**COUNT III - Conversion (Brought Derivatively)**

140. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

141. This count is brought derivatively on behalf of Energy & Compute, LLC.

142. The Soniat Defendants illegally appropriated Energy & Compute's assets and Bitcoin proceeds for their sole benefit and intentionally committed conversion.

143. Energy & Compute had ownership rights to the Bitcoin produced and investor funds that were instead diverted to the Soniat Defendants.

144. The Soniat Defendants made material misrepresentations and omissions to Energy & Compute and its investors, including but not limited to: a. Concealing the diversion of Bitcoin proceeds; b. Misrepresenting testing periods and production start dates; c. Failing to disclose self-dealing transactions; d. Creating false records about fund distributions.

145. The Soniat Defendants had a duty to Energy & Compute as fiduciaries and instead engaged in active theft and concealment.

146. The Soniat Defendants' actions harmed Energy & Compute by depriving it of assets worth over $47.1 million in Bitcoin alone.

147. The Soniat Defendants made these misrepresentations and omissions knowing they were false or with reckless disregard for their truth, with the intent to steal from Energy & Compute.

148. The specific mechanisms of the Soniat Defendants' conversion are peculiarly within Defendants' knowledge and control, as Defendants have maintained exclusive control over all company records.

149. Discovery is necessary to uncover the full extent of the conversion.

150. As a direct and proximate result of the Soniat Defendants' conversion, Energy & Compute has suffered damages exceeding $47.1 million.151. The Soniat Defendants' fraudulent conduct was willful, wanton, and malicious, justifying an award of punitive damages sufficient to punish and deter such conduct.

**COUNT IV - Breach of Fiduciary Duty**

151. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

152. As managers and controlling members of Energy & Compute, a Puerto Rico limited liability company, Defendants and their management owe fiduciary duties to all members, including Mintvest, under Puerto Rico law and the common law applicable in Puerto Rico.

153. Members of closely-held entities like Energy & Compute have a heightened fiduciary duty.

154. The breach of fiduciary duties harms Energy & Compute as an entity.156. Puerto Rico courts have exclusive jurisdiction to determine the scope and enforcement of fiduciary duties owed among members of a Puerto Rico LLC, as these are quintessential internal affairs matters.

155. These fiduciary duties include the duty of loyalty, the duty of care, the duty of good faith, the duty of candor, and the duty to treat all members fairly and not to engage in self-dealing or oppressive conduct.

156. Majority shareholders owe a fiduciary duty to minority shareholders, and this duty is breached by freeze-out tactics.

157. By engaging in the fraudulent scheme described herein, refusing to distribute profits to Mintvest while distributing to other members, stealing investor funds, blackmailing investors, and withholding required financial information and tax documents, the Soniat Defendants have willfully and maliciously breached their fiduciary duties.

158. The Soniat Defendants' breach of fiduciary duties includes violations of the duty of candor by concealing material information and the duty of loyalty by engaging in self-dealing and preferential treatment of insiders. This pattern of self-dealing is evidenced by the Soniat Defendants' history of prioritizing insider payments over corporate obligations, including making $60 million in loan repayments to Mr. Soniat immediately before entering the Katena contract while failing to meet other financial commitments.

159. The Soniat Defendants' conduct constitutes oppressive behavior and a freeze-out of a minority member in violation of its fiduciary obligations. Such conduct is particularly egregious where, as here, it is designed to deprive a minority member of millions of dollars in rightful distributions.

160. As a direct and proximate result of the Soniat Defendants' breach of fiduciary duties, Mintvest has suffered damages exceeding $104 million, which continue to increase by approximately $2.5 million per month.

161. The Soniat Defendants' conduct was willful, wanton, malicious, fraudulent, and in reckless disregard of Mintvest's rights, justifying an award of punitive damages.

**COUNT V - Breach of Contract/Operating Agreement**

162. Plaintiff Mintvest repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

163. The relationship between Energy & Compute and its members is governed by operating agreements and the implied covenant of good faith and fair dealing under Puerto Rico law, as Puerto Rico has exclusive jurisdiction over the internal affairs of Puerto Rico LLCs.

164. Under the Puerto Rico Civil Code, good faith is presumed, and every contract contains an implied covenant of good faith and fair dealing.

165. As an 18.2% member, Mintvest has contractual rights under Puerto Rico law to: a. Receive its proportionate share of company profits and distributions; b. Receive financial information and reports; c. Receive annual K-1 tax forms because the federal

government so requires; d. Be treated fairly and in good faith; e. Not be subjected to fraudulent or oppressive conduct.

166. Energy & Compute has materially breached its contractual obligations by failing to distribute Mintvest's share of profits from August 2022 through the present and failing to provide required financial information and tax documents.

167. Energy & Compute's breaches are willful and in bad faith, designed to harm Mintvest and deprive it of its membership rights.

168. As a direct and proximate result of Defendants' breach, Mintvest has suffered damages exceeding $104 million, increasing by approximately $2.5 million monthly in addition to the harm caused because Energy & Compute's freeze out has precluded Mintvest from filing proper tax returns because of the failure to send the K-1 as mandated by federal law.

**COUNT VI - Unjust Enrichment (Brought Derivatively and Directly)**

169. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

170. This count is brought both derivatively on behalf of Energy & Compute and directly by Mintvest.

171. In the alternative, Defendants have been unjustly enriched by retaining profits and assets that rightfully belong to Energy & Compute and Mintvest.

172. Mintvest has conferred a benefit upon Energy & Compute through its 18.2% ownership interest and the value it has contributed to the company, including the "sweat equity" recognized by the Delaware Chancery Court.

173. Defendants knowingly retained profits exceeding $104 million that should have been distributed to Mintvest with its 18.2% share, and it would be unjust and inequitable for Defendants to retain these benefits without compensating Mintvest.

174. When federal interests are involved, such as the violation of federal securities laws, a Plaintiff may also invoke federal common law, which includes unjust enrichment.

175. Under both federal common law and Puerto Rico law, if one party is enriched while impoverishing the second party, the first party must compensate the second.

176. Defendants' retention of these benefits is particularly inequitable given the fraudulent scheme by which they excluded Mintvest, including the theft of investor funds and blackmail of investors.

177. As a direct and proximate result, Mintvest and Energy & Compute have suffered damages equal to 18.2% of all undistributed profits from August 2022 through the present, currently exceeding $104 million.

**COUNT VII - Accounting**

178. Mintvest repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

179. As an 18.2% member of Energy & Compute, a Puerto Rico limited liability company, Mintvest has a right under Puerto Rico law to a full and complete accounting of the company's financial affairs. See 14 L.P.R.A. § 3970 (members' rights to information).

180. This Verified Amended Complaint should be considered the written demand for such information as required by 14 L.P.R.A. § 3970(e).

181. Puerto Rico Courts, including this federal court applying Puerto Rico law, has jurisdiction over LLC matters. 14 L.P.R.A. § 3961.

182. Puerto Rico's limited liability company statute vests jurisdiction in Puerto Rico courts to adjudicate disputes concerning the internal affairs of Puerto Rico LLCs, including the rights of members to receive information and accountings.

183. The right to an accounting is particularly important where, as here, a minority member has been frozen out and denied access to financial information.

184. An accounting is essential to uncover the full extent of Defendants' fraudulent scheme and self-dealing transactions, including the theft of Bitcoin and investor funds.

185. Mintvest requires an accounting to determine: a. The exact amount of profits generated by Energy & Compute from August 2022 through the present; b. All distributions made to other members; c. All revenues and expenses; d. Any self-dealing transactions or diversions of corporate opportunities; e. The full extent of Bitcoin and investor funds stolen through fraudulent schemes, including the 448.7193 Bitcoin diverted by Mr. Soniat; f. All investor contracts and related fraudulent buyouts, including but not limited to those affecting Brett Davis, Tim Becket, Anthony Coscio, Steve Wang, Jorge Wall, Christian Horcel, and all other investors whose identities and losses must be determined; g. The current financial position of the company; h. The full extent of the fraudulent scheme alleged herein.

186. The necessity of an accounting is underscored by Energy & Compute's documented history of being unable to produce proper financial statements even when required for business transactions, demonstrating either willful concealment or gross negligence in

maintaining corporate records, as found in the Katena arbitration where the company could not produce adequate financial statements despite five months of expert assistance.

187. Without a proper accounting, Mintvest cannot determine the full extent of profits owed to it or whether Energy & Compute has engaged in self-dealing, fraud, or waste.

188. Mintvest is entitled to an accounting of all revenues, expenses, profits, distributions, stolen funds, and related-party transactions from August 2022 through the present, continuing through trial.

**COUNT VIII - Breach of Tax Reporting Obligations**

189. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

190. Under 26 U.S.C. § 6031(b) and related regulations, Energy & Compute is required to provide Schedule K-1 forms to all members annually by March 15 of each year.

191. Since 2019, Energy & Compute has willfully failed to provide Mintvest with required K-1 forms.

192. Energy & Compute's management decision harms the company per se because its breach of federal law constitutes a harm to the company.

193. Upon information and belief, this failure is part of Defendants' fraudulent scheme to conceal the company's true profitability and Mintvest's share thereof.

194. This failure violates federal tax law and has damaged Mintvest by: a. Preventing proper tax compliance; b. Potentially subjecting Mintvest to penalties and interest; c. Requiring Mintvest to incur additional professional fees; d. Depriving Mintvest of information

regarding its share of company income; e. Facilitating Defendants' fraudulent concealment of profits.

195. Energy & Compute's failure to provide K-1s is willful and part of its scheme to freeze out and defraud Mintvest.

196. Mintvest has been damaged by this breach and is entitled to all damages flowing therefrom, including professional fees and any tax penalties.

197. Defendants' willful failure to provide K-1 forms violates 26 U.S.C. § 6722, and Mintvest is entitled to pursue relief under 26 U.S.C. § 7434 for the willful failure to file correct information returns.

198. Under 26 U.S.C. § 7434, Mintvest is entitled to the greater of $5,000 per violation or actual damages for each year Defendants willfully failed to provide required K-1 forms from 2019 through 2024.

**COUNT IX - Civil Conspiracy**

199. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

200. Upon information and belief, all Defendants conspired together to defraud Mintvest and deprive it of its ownership rights.

201. The unlawful objective Defendants and their co-conspirators sought to accomplish was to deprive Mintvest of its rightful profits and benefits of ownership while enriching themselves through fraudulent schemes.

202. The co-conspirators indeed illegally appropriated Mintvest's profits and thereby harmed Mintvest.

203.The conspirators agreed to engage in the fraudulent scheme described herein, including: a. Deceptively obtaining information about Mintvest's ownership; b. Excluding Mintvest from all distributions; c. Concealing financial information; d. Failing to provide tax documents; e. Engaging in self-dealing transactions; f. Making misrepresentations to third parties about Mintvest's status; g. Stealing investor funds through fraudulent Bitcoin diversion; h. Blackmailing investors to force unfair buyouts.

204.Each conspirator committed overt acts in furtherance of the conspiracy, including: a. Joshua Burandt's deceptive meeting with Prieur Leary to fraudulently obtain information about Mintvest's ownership; b. Using the fraudulently obtained information to structure the acquisition to exclude Mintvest; c. Implementing the exclusion of Mintvest from all distributions; d. Maintaining the information blackout; e. Refusing to provide legally required tax documents; f. Diverting Bitcoin mining proceeds to personal accounts; g. Threatening investors to force contract buyouts at 20% of value.

205.The conspiracy was formed with the intent to defraud Mintvest and unlawfully deprive it of over $104 million in distributions.

206.As a direct and proximate result of the conspiracy, Mintvest has suffered damages exceeding $104 million, which continue to increase monthly.

207.The conspirators' conduct was willful, malicious, and fraudulent, justifying punitive damages.

**COUNT X - Dolo**

204. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

205. In the alternative, if the factfinder were to determine that Defendants' actions do not rise to the level of fraud, Plaintiff seeks a determination that Defendants acted with dolo, in that each of their actions was committed in bad faith with the intention of harming Plaintiff and compensatory and punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Mintvest Capital, Ltd. respectfully requests that this Court:

1. Enter judgment in favor of Mintvest and against all Defendants, jointly and severally, on all counts;
2. Take judicial notice of the arbitration award in *Coinmint, LLC v. Katena Computing Technologies, Inc.*, AAA Case No. 01-22-0001-7627, as evidence of Defendants' pattern of breach of contractual obligations, financial mismanagement, material misrepresentations about financial capacity, and bad faith conduct;
3. Order an immediate and complete accounting of all profits, revenues, expenses, distributions, stolen Bitcoin, diverted investor funds, and related-party transactions of Energy & Compute from inception through the present;
4. Award Mintvest compensatory damages of at least $104 million, representing 18.2% of all profits generated by Energy & Compute from August 2022 through the present, plus approximately $2.5 million for each additional month through trial and judgment;
5. Award Energy & Compute compensatory damages of at least $47.1 million for the Bitcoin stolen through the hashrate contract scheme, with treble damages under 18 U.S.C. § 1964(c) for the Soniat Defendants' RICO violations;

6. Award statutory damages of $5,000 per violation under 26 U.S.C. § 7434 for each willful failure to provide K-1 forms from 2019-2024;
7. Award punitive damages in an amount sufficient to punish Defendants' willful, malicious, fraudulent, and oppressive conduct and to deter such conduct in the future in an amount that equals the actual damages as provided by Article 1538 of the Puerto Rico Civil Code of 2020;
8. Order Energy & Compute to provide all past-due K-1 tax forms and financial statements immediately;
9. Order Energy & Compute to distribute to Mintvest its 18.2% share of all future profits on a monthly basis;
10. Enjoin Energy & Compute from making any distributions to other members without making proportionate distributions to Mintvest;
11. Appoint a receiver or special master to oversee distributions and ensure fair treatment of Mintvest;
12. Order equitable remedies including, if necessary, a forced buyout of Mintvest's interest at fair value;
13. Award Mintvest all damages resulting from Defendants' failure to provide tax documents, including professional fees and any tax penalties;
14. Award Mintvest pre-judgment and post-judgment interest at the maximum legal rate;
15. Award Mintvest its costs and reasonable attorneys' fees to the extent allowed by law because of Defendants' temerity;
16. Grant leave to amend to add additional individual defendants upon discovery of their full involvement in the fraudulent scheme;

17. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED** this '13th day of August , 2025 in San Juan, Puerto Rico.

S/Jane Becker Whitaker/
**JANE BECKER WHITAKER**
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel. (787) 585-3824
E-mail: janebeckerwhitaker@gmail.com

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date I will have this Amended Complaint served on all parties.

S/Jane Becker Whitaker/
**JANE BECKER WHITAKER**
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel. (787) 585-3824
E-mail: janebeckerwhitaker@gmail.com

# Verification

I, Prieur Leary, declare as follows:

1. I am the sole member of Mintvest Capital, Ltd., the Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Florida.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3. I have personal knowledge of Mintvest Capital, Ltd. and Coinmint, LLC and their activities, and their intentions, including those set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

4. I verify under penalty of perjury under the laws of the United States of America pursuant to 28 U.S. C. § 1746 that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Mintvest Capital, Ltd., its activities, and its intentions.

Executed on August 13, 2025

Prieur Leary